IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Victor J. Caponey, | ) |
| | ) |
| Plaintiff, | )    CA No. 8:06-cv-00435-HMH |
| | ) |
| vs. | ) |
| | )    **OPINION & ORDER** |
| ADA Enterprises, Inc. and | ) |
| Artemio Aranda, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court for claim construction in accordance with Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). Specifically, the court will construe disputed terms found in U.S. Patent No. 6,616,400 (the "'400 patent") and Des. No. 475,854 (the "'854 patent") (collectively the "Caponey patents-in-suit").

## I. FACTUAL BACKGROUND

This case is a patent case in which Victor J. Caponey ("Caponey") alleges that ADA Enterprises, Inc. ("ADA Enterprises") and Artemio Aranda ("Aranda") infringed the Caponey patents-in-suit which cover a method for refuse collection at construction sites and a design for a stackable container.

## II. DISCUSSION OF THE LAW

"An infringement analysis requires the trial court to determine the meaning and scope of the asserted patent claims." Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1357 (Fed. Cir. 2002). "A . . . patent infringement analysis involves two steps: the

proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly construed." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). "The first step, claim construction, is a matter of law . . . ." Id. at 1582.

"Claim construction begins with the language of the claims." 3M Innovative Prop. Co. v. Avery Dennison Corp., 350 F.3d 1365, 1370 (Fed. Cir. 2003). "In construing patent claims, there is a heavy presumption that a claim term carries its ordinary and customary meaning . . . , namely its meaning amongst artisans of ordinary skill in the relevant art at the time of the invention." Id. (internal quotation marks and citations omitted). "Dictionaries and treatises may also assist the courts." Id. (internal quotation marks omitted).

"A term's ordinary meaning, however, must be considered in the context of all intrinsic evidence, namely the claims, the specification, and the prosecution history." Id. at 1371. "While limitations in the specification must not be routinely imported into the claims because a patentee need not describe all embodiments of his invention, . . . a definition of a claim term in the specification will prevail over a term's ordinary meaning if the patentee has acted as his own lexicographer and clearly set forth a different definition." Id. (internal citation omitted).

"In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." Vitronics, 90 F.3d at 1583. "In such circumstances, it is improper to rely on extrinsic evidence [such as expert testimony]." Id. In addition, claims are construed objectively and without reference to the accused device. See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999).

2

### A. '400 Patent

As to the '400 Patent, the parties dispute the following terms and phrases, all of which are found in claim one:

#### *1. Method*

The parties propose different constructions for the term "method." Essentially, the difference in the parties' proposed constructions lies in the order of the steps described in claim one of the '400 patent. Caponey proposes: "the method imposes no specific order to the sequence in which all the steps are to be performed." (Pl.'s Claim Construction Br. 9.) ADA Enterprises proposes: "the claimed method must be performed in the order provided." (Def.'s Claim Construction Br. 5.)

"Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one. However, such a result can ensue when the method steps implicitly require that they be performed in the order written." Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1342 (Fed. Cir. 2001) (internal quotation marks and citations omitted). The court construes the word "method" in the '400 patent to mean the steps described in claim one must be performed in the order listed in the claim, but that additional steps may be added. This result is dictated by logic and the language of the claim. Further, the parties agreed to this construction at the Markman hearing. (Markman Hr'g Tr. 57-58).

#### *2. Comprising, Multiple, and Rotating Fork Lift Truck*

Caponey requests that the term "comprising" be construed to mean "the named steps are essential, but other steps may be added and still form a construct within the scope of the

claim." At the Markman hearing, ADA Enterprises agreed to this construction. (Markman Hr'g Tr. 50-51.) In addition, the parties agreed at the Markman hearing that "multiple" is construed to mean "more than one." (Id. 38.) Finally, the parties agree that "rotating fork lift truck" should be construed to mean "a fork lift truck with rotatable forks." (Pl.'s Response Def.'s Claim Construction Br. 3.)

### *3. Transporting multiple containers in an inverted stack to said collection site and lifting said first container from said inverted stack with said rotating fork lift truck*

Regarding this phrase, the parties agree that "transporting" is construed to mean moving from one location to another. (Markman Hr'g Tr. 38.) In addition, as discussed above, the parties agree that "multiple" is construed to mean more than one. (Id.) Finally, the parties agree that "collection site" is construed as a location where several collection surfaces may be located. (Id. 10.)

The parties disagree as to the meaning of "inverted stack" as used in the phrase "transporting multiple containers in an inverted stack" and "lifting said first container from said inverted stack." After review of the parties' arguments, the court adopts substantially the construction put forth by ADA Enterprises.

Caponey's proposed construction of "stack" is "an orderly arrangement." (Id. 5.) ADA Enterprises' construction of stack is "an orderly arrangement of more than one container." (Id.). The court agrees with the parties' definition of "stack" as "an arrangement" and agrees with Caponey's addition of "more than one container." However, the court also finds that "stack" implies verticality in this context and pursuant to the ordinary

and customary meaning of the word. Thus, the court construes "stack" to be a vertical arrangement of more than one container.

In addition, the court agrees with ADA Enterprises' construction of "inverted." ADA Enterprises' proposed construction of inverted is "open end down, the reverse position from that in which a container functions as a container." (Def.'s Claim Construction Br. 7.) Caponey's proposed construction of "inverted" is "rotated from a first position to a reverse position." (Pl.'s Response Def.'s Claim Construction Br. 9.)

Caponey's construction of "inverted" is so broad as to render the word meaningless in the context of the language of the claim. Caponey urges the court to construe "inverted" to mean that a stack is inverted if it has ever been rotated from one position to another. Thus, under Caponey's construction, an inverted stack "is not limited to a particular position" and could refer to a stack of containers with the open side facing up or a stack of containers with the open side facing down. (Pl.'s Claim Construction Br. 9.)

The court finds that in the context of claim one of the '400 patent, "inverted" is construed to mean open end down, the reverse position from that in which a container functions as a container. This construction is consistent with the ordinary and customary meaning of the word as "to turn inside out or upside down." (Id. Ex. F (AMERICAN HERITAGE DICTIONARY Excerpts 9).)

In addition, this meaning is dictated by the logic and the language of the claim. The rotating step of the claim indicates that the containers in the inverted stack are stacked open end down and subsequently rotated into an open-side up position in order to collect refuse. Further, the use of the word "inverted" to describe the stack indicates a fixed rather than a

relative meaning that indicates containers which are upside down from their normal, upright position. If the word is construed to mean containers that have been rotated from one position to another at some point in time, the word is an unnecessary and meaningless addition to the claim language.

Finally, this meaning is supported by the prosecution history and prior art of the '400 Patent. The examiner initially rejected claim one of Caponey's patent application, noting that

> [i]t would have been obvious to one of ordinary skill in the art, at the time of invention that the stacking containers . . . can be inverted on the delivery vehicle and be retrieved from the vehicle as a stack by a set of fork receiving members in the open top of the container or one at a time by means of the fork receivers at the closed bottom of the container.

(Def.'s Claim Construction Br. Ex. C, Part 1 (Prosecution History 43).) In response, Caponey argued that "only from the present disclosure does one find a motivation for inverting a stackable container for transport and storage. Only in light of the present teachings are the advantages of rotating a stackable container to an inverted position appreciated." (Id. Ex. C, Part 2 (Prosecution History 3).) In this exchange, both the examiner and Caponey use "inverted" to refer to containers oriented with the open end down, and Caponey's arguments based on this meaning weigh in favor of a finding that "inverted" should be construed to mean open end down. See Seachange Int'l, Inc. v. C-Cor, Inc., 413 F.3d 1361, 1372-73 (Fed. Cir. 2005) ("Where an applicant argues that a claim possesses a feature that prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language."). Based on the foregoing, the court construes "inverted" as open end down, the reverse position from that in which a container functions as a container.

### *4. First Container*

The parties dispute the proper construction of "first container." Caponey proposes to construe "first container" as "outermost container." (Pl.'s Claim Construction Br. 18.) Defendant proposes to construe "first container" as "upper most container." (Def.'s Claim Construction Br. 12.) Because the specification of the '400 Patent refers to an "outermost container," the court construes "first container" as outermost container. (Def.'s Claim Construction Br. Ex. A ('400 Patent col. 5, lines 50-65).)

### *5. Engaging*

The parties dispute the proper construction of "engaging." Caponey proposes to construe "engaging" as receiving or aligning and receiving. (Pl.'s Claim Construction Br. 12.) ADA Enterprises proposes to construe engaging as interlocking or meshing. (Def.'s Claim Construction Br. 12.) The specification of the '400 Patent states that "[t]he forks . . . are aligned with and slidably received by the fork channels . . . ." (Id. Ex. A ('400 Patent, col. 5, lines 52-53).) Therefore, the court construes "engaging" as aligning with and being received by.

### *6. Inverting said first container such that said refuse enters a collection bin of a collection truck*

Finally, the parties dispute the proper construction of "inverting said first container such that said refuse enters a collection bin of a collection truck." Caponey proposes to construe the step as "reversing the position of first container to such a degree that refuse enters a collection bin." (Pl.'s Resp. Def.'s Claim Construction Br. 14.) ADA Enterprises proposes to construe "inverting" to mean "invert the position of the first container, now

7

containing refuse, from the position in which it is used to collect refuse (open side up) to the reverse position (open side down)." (Def.'s Claim Construction Br. 14.) Pursuant to the plain language of this step of claim one, the court construes the step as reversing the position of first container from an open side up position to an open side down position to such a degree that refuse enters a collection bin. This construction maintains the consistency of the word "invert" throughout the claim, with the addition of the modifying clause that indicates the container is inverted "such that said refuse enters a collection bin of a collection truck." Further, this construction is mandated by logic. In order to empty collected refuse from the container, the container is necessarily inverted from an open side up to an open side down position.

### B.  '854 Patent

The '854 Patent is a design patent. "In construing a design patent claim, the scope of the claimed design encompasses its visual appearance as a whole, and in particular the visual impression it creates." Contessa Food Prods. Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) (internal quotation marks omitted). However, "[a] design patent only protects the novel, ornamental features of the patented design." OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997). Therefore, "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." Id. A court's claim construction of a design patent claim therefore properly limits the scope of the patent to the overall ornamental visual impression it creates, rather than to the broader general design concept. See Durling v. Spectrum Furniture Co., 101 F.3d 100, 104 (Fed. Cir. 1996).

ADA Enterprises contends that the '864 Patent is devoid of ornamental features and contains only functional features. (Def.'s Claim Construction Br. 15.) "[T]he design of a useful article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article. If the particular design is essential to the use of the article, it can not be the subject of a design patent." L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed. Cir. 1993) (internal quotation marks and citation omitted). Thus, "if other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional." Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1378 (Fed. Cir. 2002).

Pursuant to this standard, the court finds that the '864 Patent is not devoid of ornamental features. The court agrees with Caponey that "[a] multitude of different designs could perform the function of collecting refuse." (Pl.'s Resp. Def.'s Claim Construction Br. 15.) A container could contain any number of sides and any number of openings. Further, the sides and bottom could consist of different shapes than those represented in the '864 Patent. Finally, the sides and bottom could be curved rather than straight. Based on the foregoing, the court finds that the claim of the '864 Patent is not devoid of ornamental features and construes it as follows:

The overall visual impression conveyed by the ornamental design for a container consisting of four trapezoidal adjacent sides meeting at non-parallel edges with a closed, rectangular bottom and an open, rectangular top, in the proportions shown in Figures 1-7 of the '854 Patent.

**IT IS SO ORDERED.**

                                              s/Henry M. Herlong, Jr.
                                              United States District Judge

Greenville, South Carolina
May 7, 2007