IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Victor J. Caponey, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | C.A. No. 8:06-435 |
| ) | |
| ADA Enterprises, Inc. and Artemio ) | |
| Aranda, ) | |
| ) | **OPINION & ORDER** |
| Defendants/ ) | |
| Third-Party ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| CleanSite Services, Inc., ) | |
| ) | |
| Third-Party ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on ADA Enterprises, Inc. and Artemio Aranda's (collectively "ADA") motion for summary judgment. After a review of the law and facts of this case, the court denies the motion for summary judgment.

### I. FACTUAL BACKGROUND

This is a patent case in which Victor J. Caponey ("Caponey") alleges that ADA infringed two patents which cover a method for removing refuse from construction sites and a design for a container. Specifically, Caponey alleges ADA infringed U.S. Patent Nos. 6,616,400 (the "'400 patent"), which is a utility patent titled "Method for Highly Efficient Refuse Removal From a Construction Site," and D475,854 (the "'854 patent"), which is a

1

design patent for the ornamental design of a "Stackable Container." ADA asserted counterclaims for non-infringement and/or invalidity of the '854 and '400 patents.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record

2

which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998). Furthermore, the court notes "[s]ummary judgment is as appropriate in a patent case as in any other." Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd., 731 F.2d 831, 835 (Fed. Cir. 1984).

## B. ADA's Summary Judgment Motion

ADA moves for summary judgment in its favor on the following grounds:

1. [The '400 patent] is invalid, as anticipated by prior art or as obvious.

2. [The '854 patent] is invalid, as obvious or anticipated by prior art and as lacking patentable subject matter.

3. Defendants do not infringe [the '854 patent] either literally or under the doctrine of equivalents.

4. Defendants do not infringe [the '400 patent] under the doctrine of equivalents.

(Defs.' Mot. Summ. J. 1.)

### 1. Validity of the '400 patent

ADA contends that the '400 patent is invalid under 35 U.S.C. § 103(a) because the method claimed in the patent "would have been obvious at the time the invention was made to a person having ordinary skill in the art." Id.; (Defs.' Mem. Supp. Summ. J. 4-11.) Caponey argues that ADA fails to present clear and convincing evidence that the '400 patent is invalid because of obviousness.

"A patent shall be presumed valid." 35 U.S.C. § 282 (2001). However, "such presumption of validity does not necessitate the submission of the question of [validity] to the

jury if the patent appears to the court to be plainly invalid." Ryan Distrib. Corp. v. Caley, 147 F.2d 138, 141 (3d Cir. 1945). "Where the question is free from doubt, the court may dispose of it on motion." Id. Accordingly, a party "seeking to invalidate a patent at summary judgment must submit . . . clear and convincing evidence of invalidity." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001).

A claim is invalid if the differences between it and the prior art "are such that the [claimed] subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a) (2001). "While the ultimate question of patent validity is one of law, the § 103 condition . . . lends itself to several basic factual inquiries." Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 17 (2007) (internal citations omitted). For example,

> the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

Id. at 17-18. Thus, "[t]he issue of obviousness may be decided on motion for summary judgment when the underlying facts are not in dispute, or when the movant must prevail even if disputed facts and inferences therefrom are resolved in favor of the non-movant." Karsten Mfg. Corp. v. Cleveland Golf Co., 242 F.3d 1376, 1384-85 (Fed. Cir. 2001).

Claim 1[1] of the '400 patent is as follows:

1. A method for refuse removal from a collection site comprising:

   transporting multiple containers in an inverted stack to said collection site;

   engaging a first container of said multiple containers with a rotating fork lift truck;

   lifting said first container from said inverted stack with said rotating fork lift truck;

   rotating said first container with said rotating fork lift truck;

   lowering said first container to a collection surface;

   collecting said refuse in said first container;

   lifting said first container with said rotating fork lift truck and inverting said first container such that said refuse enters a collection bin of a collection truck.

(Defs.' Mem. Supp. Summ. J. Ex. 1 ('400 Patent 11-12).)

In their motion for summary judgment, ADA argues that relevant prior art renders the '400 patent invalid due to obviousness. (Id. 4.) First, ADA contends that in the recent case of KSR Int'l Co. v. Teleflex, Inc., 127 S. Ct. 1727 (U.S. April 30, 2007), the United States Supreme Court rejected the test for obviousness applied by the patent examiner when approving the '400 patent. (Defs.' Mem. Supp. Summ. J. 7-8.) In KSR International, the Court rejected the "teaching, suggestion, or motivation" obviousness test previously used by the Federal Circuit "under which a patent claim is only proved obvious if some motivation or suggestion to combine the prior art teachings can be found in the prior art, the nature of the

---

[1] The validity of the remaining claims of the '400 patent is dependent upon claim 1.

problem, or the knowledge of a person having ordinary skill in the art." 127 S. Ct. at 1734 (internal quotation marks omitted). Rather than establishing a new standard, however, the Supreme Court rejected the "motivation" standard used by the Federal Circuit because it was inconsistent with § 103 and the Court's long-standing precedents, including Graham. Id. at 1735, 1739.

The patent examiner originally rejected Caponey's application for the '400 patent as obvious and thus unpatentable in light of U.S. Patent No. 5,281,073 (the "Gesuale patent"), which teaches a method of refuse removal and stackable containers, and U.S. Patent No. 5,730,576 (the "O'Daniel patent"), which teaches a method for lifting and dumping containers involving rotating fork carriages. (Defs.' Mem. Supp. Summ. J. Ex. 4 ('400 Patent Prosecution History Part 1, 43-44).) In response, Caponey argued that "one of ordinary skill in the art would never consider inverting the containers [using the Gesuale method] since this would prohibit withdrawing the forks from the fork channels." (Id. Ex. 4 ('400 Patent Prosecution History Part 2, 1).) In addition, Caponey argued that the container side channels of the O'Daniel method would prohibit a stackable container. (Id. Ex. 4 ('400 Patent Prosecution History Part 2, 2).) Finally, Caponey asserted that "[e]ven if the combined wisdom of Gesuale and O'Daniel were ignored there would still be no motivation to invert the containers for transport. It is only from the present disclosure does one find a motivation for inverting a stackable container for transport and storage." (Id. Ex. 4 ('400 Patent Prosecution History Part 2, 4).) Ultimately, the patent examiner allowed claim one because "[t]he prior art of record does not teach or suggest the step of transporting a stack of inverted containers to a collection site." (Id. Ex. 4 ('400 Patent Prosecution History Part 2, 12).)

ADA contends that the patent examiner's final approval of claim one impermissibly relied upon the "teaching, suggestion, or motivation" test rejected by the Supreme Court in KSR International. However, Caponey's arguments in favor of approval of the '400 Patent went beyond merely asserting that prior art contained no motivation to invert the containers for transport. In addition, Caponey asserted that it would be physically impossible to merely combine the teachings of the Gesuale and O'Daniel patents. This argument could support a finding of nonobviousness pursuant to relevant Supreme Court precedent in place at the time the '400 patent was approved and reaffirmed in KSR International. See KSR Int'l, 127 S. Ct. at 1740 ("[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious."). Further, ADA fails to demonstrate from the patent examiner's cursory justification for allowing the '400 patent that he impermissibly applied the "teaching, suggestion, or motivation" test for allowing the patent, which would have otherwise been rejected under the Graham test. Therefore, to the extent ADA seeks to invalidate the '400 patent based on the recent holding in KSR International, this argument is without merit.

Second, ADA argues that additional prior art that was not before the patent examiner renders the '400 patent invalid due to obviousness. (Defs.' Mem. Supp. Summ. J. 8.) ADA submits evidence of prior art, including "[t]he use of fork lift prongs or elevating prongs to lift and dump trash containers;" rotating fork lift prongs in use with trash containers; stackable or nestable bins; and "spreading small containers throughout a housing area, including delivery from an inverted stack, then returning to empty them periodically." (Id. 9.)

Specifically, ADA largely relies upon materials and affidavits submitted by Roger Oukrop ("Oukrop") and Jennifer Kunde ("Kunde"). However, the court finds that a genuine issue of material fact exists with regard to the existence and scope of the prior art Oukrop and Kunde describe and whether they qualify as persons of ordinary skill in the art. Kunde was formerly employed as "Recycling Coordinator for the City of Greenfield, Wisconsin" and describes a method for distributing stacked bins to houses for the purpose of collecting materials to be recycled. (Defs.' Mem. Supp. Summ. J. Ex. 7 (Kunde Aff. ¶¶ 3-5).) Oukrop was formerly employed with DeWald Northwest Company and describes the use of forklifts to move stacks of nested containers and the use of such containers at construction sites to collect debris and/or recyclable materials. (Id. Ex. 6 (Oukrop Aff. ¶¶ 3-4, 8).)

Oukrop and Kunde's testimony largely consists of uncorroborated oral testimony. "Uncorroborated oral testimony . . . does not, of itself, provide the clear and convincing evidence required to invalidate a patent" based on prior art. Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1369 (Fed. Cir. 1998). In addition, Caponey alleges that Oukrop has admitted that he never actually saw the containers he manufactured in use. (Pl.'s Mem. Opp'n Summ. J. 13-14, Ex. I (Oukrop Depo. 76-79).) Finally, Caponey challenges whether Kunde's experience in the recycling industry and Oukrop's experience manufacturing refuse containers qualify them as persons of ordinary skill in the art of refuse removal from construction sites. (Id. 13.) Thus, this is not a case where "there is no dispute as to the scope and content of the prior art, the differences between the patented invention and the prior art, or the state of ordinary skill in the field of the invention." Karsten Mfg. Corp., 242 F.3d at 1385; see also Rockwell Int'l Corp. v. United States, 147 F.3d 1358, 1366-67 (Fed. Cir.

1998) (holding that genuine issues of material fact relating to the first three Graham factors precluded a determination of obviousness on summary judgment, and that "in resolving a summary judgment motion inferences may not be drawn against the nonmovant"). While ADA has presented some evidence of the invalidity of the '400 patent, this evidence does not resolve all doubt in ADA's favor, and genuine issues of material fact remain. Accordingly, ADA's summary judgment motion as to the validity of the '400 patent is denied.

### 2. Validity of the '854 Patent

In its motion for summary judgment, ADA seeks a declaration that the '854 patent is invalid. ADA bases this assertion on three grounds: (1) invalidity because the '854 patent has no point of novelty, (2) invalidity based on prior art, and (3) invalidity based on lack of ornamentation. (Defs.' Mem. Supp. Summ. J. 11, 18.).

First, ADA argues that the United States Court of Appeals for the Federal Circuit's recent decision in Lawman Armor Corp. v. Winner International, LLC, 449 F.3d 1190 (Fed. Cir. 2006), renders the '854 patent invalid. (Defs.' Mem. Supp. Summ. J. 12-13.) In that case, the Federal Circuit held that "the overall appearance of a design cannot itself be a point of novelty." Id. at 1192. ADA argues that Caponey "has consistently agreed that the patentable ornamental feature, or point of novelty, of the '854 patent is its overall visual impression." (Pl.'s Mem. Supp. Summ. J. 12.) Thus, ADA argues that the '854 patent is invalid pursuant to the holding in Lawman.

However, the Federal Circuit also held in Lawman that "in appropriate circumstances a combination of design elements itself may constitute a 'point of novelty.'" 449 F.3d at 1192. Caponey asserts that "the point of novelty of the '854 Patent is a combination of design

9

features, including four trapezoidal adjacent sides meeting at non-parallel edges with a closed, rectangular bottom and an open, rectangular top . . . combined in the proportions shown in" the '854 patent. (Pl.'s Mem. Opp'n Summ. J. 15.) Therefore, ADA's argument that "Caponey has never defined any point of novelty that distinguishes his design from the prior art" is without merit. (Defs.' Mem. Supp. Summ. J. 13.)

Second, ADA argues that the '854 patent is invalid as obvious due to undisclosed prior art. ADA asserts that "[m]ost critically, Caponey did not disclose to the Design Patent Examiner three patents that had been cited in the prosecution of the Utility Patent, namely Gesuale U.S. Patent No. 5,281,073; Monson U.S. No. Patent [sic] 3,613,924; and Pickler U.S. Patent No. 4,913,301." (Id. 13.) Caponey filed the applications for the '400 and '854 patents on the same day and originally included the container claims described in the '854 design patent as part of the application for the '400 utility patent. (Id. Ex. 4, Part 1, 13-14.) However, on October 17, 2002, the utility patent examiner rejected the application based on the Gesuale, Monson, and Pickler patents. (Id. 14; Ex. 4, Part 1, 40-48.) After the patent examiner's rejection of the container claims in the '400 patent, Caponey withdrew the claims from consideration.

ADA argues that because of the utility patent examiner's rejection of the container claims in the '400 patent based on the Gesuale, Monson, and Pickler patents, Caponey should have disclosed the three patents to the design patent examiner. (Id. 15.) "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [Patent] Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability . . . ." 37 C.F.R.

10

§ 1.56(a).  "[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application."  37 C.F.R. § 1.56(b).

Caponey asserts that the Gesuale, Monson, and Pickler patents were immaterial to the invention of the '854 patent because the patents were "at best cumulative, and at worst, less relevant, to the patent references already before the patent examiner . . . ."  (Pl.'s Mem. Opp'n Summ. J. 17.)  Specifically, Caponey asserts that the three patents "fail to teach four trapezoidal sides, which is a required feature of the '854 Patent, but at least some of the patent[] references before the patent examiner did teach this required feature."  (Id.)

> Unlike an invention in a utility patent, a patented ornamental design has no use other than its visual appearance, and its scope is limited to what is shown in the application drawings.  Therefore, in considering prior art references for purposes of determining patentability or ornamental designs, the focus must be on appearances and not uses.

In re Harvey, 12 F.3d 1061, 1064 (Fed. Cir. 1993) (internal citations and quotation marks omitted).  Because of differences in the material protected by design and utility patents, the fact that a patent is relevant prior art to the application of a utility patent does not necessarily mean that the patent will be relevant prior art for purposes of a design patent.  Further, the court agrees that the Gesuale, Monson, and Pickler patents were less relevant as prior art to the '854 patent than the patent references before the patent examiner.  (Defs.' Mem. Supp. Summ. J. Ex. 10, Part 1 (Monson Patent 32-36); Part 2 (Pickler and Gesuale Patents 23-36, 47-54).)

In addition to the Gesuale, Monson, and Pickler patents, ADA asserts that additional prior art was not disclosed to the patent examiner.  ADA presents Oukrop's affidavit and accompanying photographs and drawings as evidence of nondisclosed prior art, including

"containers with the same shape as that of the" '854 patent. (Defs.' Mem. Supp. Summ. J. 17.) ADA alleges that the photographs "were made more than 20 years ago." (Id.) In addition, ADA alleges that the following is a brief summary of prior art that was not disclosed to the patent examiner:

>    Virlouvet, Fr. Patent No. 1,258,013 (1961)
>
>    Richardson, UK Pat. App. No. 2,289,881 (1995)
>
>    ANSI standards Z245.3 and Z245.6
>
>    Skips Direct website, February 1, 2001
>
>    Cascade Corporation website, copyright 2000
>
>    Ou Arrierum website, copyright 1997-2001
>
>    Wastesaver website, March 3, 2001
>
>    Rain & Horne Gladstone website, copyright 2000, 2001
>
>    Malins Roofing Co. website

(Id. 17-18.) ADA asserts that there is no patentable point of novelty distinguishing the '854 patent from this prior art, along with the Gesuale, Monson, and Pickler patents, and that the '854 patent is consequently invalid. (Id. 18.)

Further, as with the '400 patent, Caponey asserts that the Oukrop affidavit represents nothing more than uncorroborated testimony regarding when the containers he describes were sold. (Pl.'s Mem. Opp'n Summ. J. 19.) In addition, Caponey argues that besides three foreign patents which fail to illustrate four trapezoidal sides, the remaining references provided by ADA are either cumulative or fail to illustrate a container having the specific proportions of the '854 patent. (Id. 17-18.) Finally, Caponey asserts that it is impossible to

12

view the overall design of many of the containers depicted in the internet web sites because only two sides of the containers are visible. (Id. 18.)

Based on the foregoing, factual disputes exist regarding the existence and scope of prior art at the time the '854 patent was issued. Therefore, summary judgment based on the argument that the '854 patent is invalid based on obviousness is not appropriate.

Finally, ADA argues that the '854 patent is invalid because it is devoid of ornamental features. (Defs.' Mem. Supp. Summ. J. 18.) "A design patent only protects the novel, ornamental features of the patented design." OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997). Thus, ADA contends that because "[e]ach and every element of [the] claimed design serves a functional purpose," the '854 patent is invalid. (Defs.' Mem. Supp. Summ. J. 18.)

"[T]he design of a useful article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article. If the particular design is essential to the use of the article, it can not [sic] be the subject of a design patent." L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed. Cir. 1993) (internal quotation marks and citation omitted). Thus, "if other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional." Rosco, Inc. v. Mirror Life Co., 304 F.3d 1373, 1378 (Fed. Cir. 2002).

Pursuant to this standard, the court held in its May 7, 2007, order that the '854 patent is not devoid of ornamental features. In its motion for summary judgment, ADA has presented no evidence to alter this conclusion. While the ornamental features of the '854 patent may also serve a functional purpose, this alone does not strip them of their ornamental

qualities. As the court noted in its May 7, 2007, order, "a multitude of different designs could perform the function of collecting refuse." (May 7, 2007, Order 9.) By way of example, the container depicted in the Gesuale patent functions in largely the same way as the container in the '854 patent, but has a different visual impression. (Defs.' Mem. Supp. Summ. J. Ex. 10, Part 2 (Gesuale Patent 47).) Therefore, because the appearance of the container depicted in the '854 patent is not dictated by its function, the court finds that the '854 patent is not invalid based on a lack of ornamental features. Based on the foregoing, ADA's motion for summary judgment declaring the '854 patent invalid is denied.

### 3. Infringement of the '854 Patent

ADA argues that even if the '854 patent is valid, it did not infringe the patent. (Id. 20.) In its May 7, 2007, order, the court construed the '854 patent as:

> The overall impression conveyed by the ornamental design for a container consisting of four trapezoidal adjacent sides meeting at non-parallel edges with a closed, rectangular bottom and an open, rectangular top, in the proportions shown in Figures 1-7 of the '854 Patent.

(May 7, 2007, Order 9.)

ADA asserts that none of the containers used by it infringe the '854 patent as construed. (Defs.' Mem. Supp. Summ. J. 21.) ADA contends that none of its containers have the same shape and/or proportions as the container described in the '854 patent. (Id. 21-23.) In support of this argument, ADA has submitted photographs and diagrams of the containers it allegedly used. (Id. Ex. 13 (Dalbert U. Shefte, Esq. ("Shefte") Aff. 3-24).)

In response, Caponey argues that the containers depicted by ADA "are virtually indistinguishable from the designs shown in figures 1-7 of the '854 Patent." (Pl.'s Mem.

Supp. Summ. J. 24.) In addition, Caponey asserts that ADA has admitted to using refuse containers of the same shape, if not necessarily the same proportions, as that of the '854 patent. Further, ADA has purchased containers from the same container manufacturer used by Caponey and indicated that a client who did not want to work with Caponey anymore gave ADA the manufacturer's contact information so that ADA could purchase the same containers previously used by Caponey. (Id. Ex. C (Artemio Arnada ("Arnada") Dep. at 26).) Therefore, the court finds that a genuine issue of material fact exists regarding whether ADA used containers that infringed the '854 patent. Based on the foregoing, ADA's motion for summary judgment of non-infringement of the '854 patent is denied.

### 4. Infringement of the '400 Patent

Finally, ADA moves for partial summary judgment of non-infringement of the '400 patent under the doctrine of equivalents.[2] Literal infringement requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification. See, e.g., Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1320 (Fed. Cir. 1999). Functional identity and either structural identity or equivalence are both necessary. See Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934 (Fed. Cir. 1987), overruled in part on other grounds by, Cardinal Chem. Co. v. Morton Int'l, 508 U.S. 83 (1993).

If every claim limitation is not present in the accused device so that the device literally infringes upon the patent, the court should also analyze the claim under the doctrine of

---

[2] ADA does not move for summary judgment of non-infringement on the grounds that it did not literally infringe the '400 patent.

equivalents. Under the doctrine of equivalents, an accused device "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997) (citing Graver Tank & Mfg. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950)). If part of the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as an element or limitation of the claimed device, then that part of the accused device is considered equivalent. Id. at 38-39. If the challenging party shows that a person skilled in the art knows that a claimed feature and an accused feature are interchangeable, that is strong evidence of insubstantial differences. Id. at 37. Whether an accused device infringes a claim as an equivalent is a question of fact. See C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1363 (Fed. Cir. 1998).

First, ADA asserts that prosecution history estoppel prevents Caponey from asserting the doctrine of equivalents. (Defs.' Mem. Supp. Summ. J. 24-25.)

> Prosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose. Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question.

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 734 (2002). In other words, "prosecution history estoppel will not allow the patentee to recapture through equivalence certain coverage given up during prosecution." Loctite Corp. v. Ultraseal, Ltd., 781 F.2d 861, 870 (Fed. Cir. 1985), overruled on other grounds by, Nobelpharma Ab v. Implant Innovations, 141 F.3d 1059 (Fed. Cir. 1998).

After the patent examiner initially rejected the claims of the '400 patent application, Caponey, in part, argued that "only from the present disclosure does one find a motivation for inverting a stackable container for transport and storage." (Defs.' Mem. Supp. Summ. J. Ex. 4, Part 2 ('400 Patent Prosecution History 3).)  Thus, ADA asserts that "the inversion elements of the '400 Patent cannot be expanded under the doctrine of equivalents; they must be literally present, or there is no infringement." (Id. 25.)

While it is possible to imagine a scenario where Caponey's argument to the patent examiner could serve as a basis for prosecution history estoppel, it is overreaching to say that this argument completely precludes application of the doctrine of equivalents.  "[T]he doctrine of equivalents does not involve expansion of the claims." Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 684 (Fed. Cir. 1990), overruled in part on other grounds by, Cardinal Chem. Co., 508 U.S. 83.  While Caponey's argument does limit the claim to an inverted stack, this limitation was already present in the claim language.  His argument did not limit the scope of the claim beyond the language in the claim presented in the initial application which ultimately became the '400 patent.  Therefore, any potential application of prosecution history estoppel does not bar the application of the doctrine of equivalents.

Second, ADA concludes that the doctrine of equivalents is precluded by the limitations imposed by prior art. (Defs.' Mem. Supp. Summ. J. 25-26.)  "Even if [the equivalence] test is met . . . there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." Wilson Sporting Goods Co., 904 F.2d at

17

683. "[W]hether an asserted range of equivalents would cover what is already in the public domain" is a question of law.  Id.

ADA argues that any application of the doctrine of equivalents that excludes the inversion elements of the '400 patent would result in the invasion of prior art.  (Defs.' Mem. Supp. Summ. J. 26.)  Thus, ADA argues that the "crowded field of prior art . . . require[s] the element of 'transporting multiple containers in an inverted stack' to be literally present to support any claim of infringement."  (Id.)  However, a decision on summary judgment that the doctrine of equivalents cannot apply at all to the '400 patent based on prior art would be premature.

It is unclear at this stage whether Caponey will ultimately assert a range of equivalents in order to establish infringement and, if so, what the scope of the range will be.  In its response to ADA's motion for summary judgment, Caponey asserts that an equivalent to an inverted stack would be the "tipping or flipping of an upright stack."  (Pl.'s Mem. Opp'n Summ. J. 23.)  Because this limitation or others could potentially maintain the inversion elements of the '400 patent, it is possible that this range of equivalents would not invade prior art.  Thus, at this time it cannot be said that Caponey cannot assert any equivalents to the '400 patent that would not invade prior art.  Based on the foregoing, ADA's motion for summary judgment of non-infringement of the '400 patent based on the doctrine of equivalents is denied.

Therefore, it is

**ORDERED** that the Defendants' motion for summary judgment, docket number 79, is denied.

**IT IS SO ORDERED.**

                                                s/Henry M. Herlong, Jr.
                                                United States District Judge

Greenville, South Carolina
September 20, 2007